```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/18/08
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

                07 Cr. 348 (RPP)

       - against -                **OPINION & ORDER**

SRINIVAS KASI, et al.

       Defendants.
------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

On January 22, 2008, Defendant Srinivas Kasi ("Defendant") moved pursuant to Rule 33(a) of the Federal Rules of Criminal Procedure for a new trial on the grounds that the jury's verdict was prejudicially tainted by the rebuttal summation of the Government. For the following reasons, the Defendant's motion is denied.

## BACKGROUND

On January 9, 2008, a jury unanimously convicted the Defendant of: 1) conspiracy to commit food stamp fraud in violation of 18 U.S.C. § 371 and 7 U.S.C. § 2024; 2) committing food stamp fraud in violation of 7 U.S.C. § 2024; and 3) stealing money or a thing of value from the United States in violation of 18 U.S.C. § 641.

At trial, the Government presented evidence that food stamp fraud was occurring at Akhila, Inc. ("Akhila"), a small grocery store co-owned by the Defendant. There were video and audio transmissions of confidential informants redeeming cash for food stamp redemptions at Akhila, Inc. There was also the credible testimony of Raveendra Puttaramu, a cash register attendant at Akhila and a cooperating witness, who testified he was instructed by the Defendant to give customers cash for approximately 70% of face

value of food stamp redemptions, so that Akhila would profit by approximately 30% of the face value of the food stamp redemptions. (Tr. 178-79.) Puttaramu also testified that he had been living with the Defendant, and that each evening, he would review the daily transactions of Akhila with the Defendant, including food stamp redemptions. (Tr. 171-72, 253-64.) Puttaramu recorded these daily transactions in his notebook, in which the food stamp receipts were separately tallied. (Gov't Ex. 8.) Puttaramu also testified that the Defendant had sole control over Akhila's bank accounts, and that "up until the day [Puttaramu] got arrested" (Tr. 219) on April 12, 2007, he would accompany the Defendant for withdrawals of money from Akhila's Valley National bank account, which would be given to Puttaramu to enable him to continue giving customers cash in exchange for food stamp redemptions. (Tr.179-80, 209-219.)

Puttaramu's testimony was supported by documentary evidence in the form of bank records from Akhila's account at Valley National Bank, which showed that the Defendant had sole control over that account, into which the United States Department of Agriculture Food and Nutrition Service ("FNS") deposited food stamp reimbursements. (Tr. 554-55.) In 2006 and 2007, checks from Akhila's Valley National Bank account were written to "cash," signed by the Defendant, endorsed by the Defendant, and also endorsed by Puttaramu. (Tr. 561, Gov't Ex. 3505-N.) In addition, the Government introduced voluminous bank records from accounts belonging to the Defendant, in his individual capacity, at Valley National Bank, Commerce Bank, and Citibank. Bank records showed that checks from Akhila's Valley National Bank were written to the Defendant, and that money from that account was directly transferred into the Defendant's Commerce Bank savings account (Tr. 562). The Government also presented

records kept by the FNS that showed the sizeable disparity between food stamp redemptions at Akhila and comparably-sized grocery stores.

Paul Covington, a certified public accountant employed by the Defendant, testified that the Defendant continued to provide him with monthly and quarterly financial records of Akhila long after the Defendant obtained employment outside of Akhila. Mr. Covington's testimony about Akhila's tax filings supported Puttaramu's testimony regarding the total monthly sales from 2004 to the first quarter of 2007. Finally, a forensic accounting specialist, Gerald Levy, traced the FNS' food stamp reimbursements from Akhila's Valley National Bank account to the Defendant's personal bank accounts, and the Defendant's use of such funds for personal expenses. Mr. Levy also testified that the Defendant transferred $46,000 from his personal bank account to another account in India on April 13, 2007, which was the day after Puttaramu and Lokesh Bhat, the Defendant's nephew and store co-owner, were arrested. (Tr. 578-79.)

In summation, the Defense argued to the jury that the Government did not meet its burden of proving that the Defendant had knowledge of the conspiracy to commit food stamp fraud at Akhila. (Tr. 717.) More specifically, it argued that the Defendant's involvement in the daily operations of Akhila was limited during the time period that the food stamp fraud occurred, because the Defendant was employed elsewhere beginning in 2005. (Tr. 713-14.) The Defense also attacked the credibility of Puttaramu. (Tr. 711-12.)

A. *The Government's Rebuttal Summation*

During its rebuttal summation, the Government, in the course of discussing the Defendant's bank records displayed on a screen, made the following argument to the jury:

> April 13th, the day after Puttaramu and Bhat are arrested, what does Mr. Kasi do? He wires $46,000 to his wife's account in India, having at least, according to the records that you have from Commerce Bank, Valley National and all the other bank accounts he controls, having never done anything like that before, although he did send money overseas. He sent $46,000 to India the day after his employees were arrested. What does that tell you about how nervous Kasi is about whether he's next?

(Tr. 729-30)

At a sidebar conference immediately following the Government's rebuttal, the Defense made the following objection to the Government's rebuttal:

> **Mr. Condon**: The last thing that Ms. Frase said, about the consciousness of guilt related to that wire transfer. There was no evidence that my client was aware that Mr. Puttaramu or Mr. Bhat was arrested at the time of the making of that transfer. There was zero testimony in this regard to prove that. So there is no motive—the government is arguing that he knew that he had been arrested and therefore he made the transfer. There is no evidence to support that whatsoever.
>
> **The Court**: I think that's true.
>
> **Ms. Frase**: It is a fair inference the jury can draw based on the actions he took, and then, as I pointed out to the jury, that was the only instance of that size and nature of transfer. The proximity in time to the arrest of his two primary—the people running his store after there had been a search warrant at the premises, and if there is no evidence, it is certainly something that the jury could fairly look at to say whether or not he in fact did know they had been arrested and what actions he took to conceal his own involvement after they were.
>
> **The Court**: What do you want me to do about it, Mr. Condon?
>
> **Mr. Condon**: I don't know, your Honor. I mean, I think that it is prejudicial to my client to have it hanging out there when we know that there was no testimony that he was made aware of it, that there was a search warrant, that he was made aware that there was an arrest of either individual, and now the government has closed with that giant screen with the wire transfer alleging that there is some malfeasance related to the wire transfer.
>
> **Ms. Frase**: We are not alleging it as a malfeasance in and of itself. We are showing what is in the defendant's—
>
> **The Court**: I will instruct the jury that there is no evidence in this record showing that Mr. Kasi was aware of the arrests of the two codefendants.

>  **Ms. Frase**: OK.
>
>  **Mr. Condon**: Very good, your Honor.
>
>  **The Court**: All right.

(Tr. 732-33.)

The Court then immediately instructed the jury as follows:

> **The Court**: Ladies and gentlemen, I don't believe there is any evidence in this record that Mr. Kasi was aware of the arrests of the codefendants, Mr. Bhat and Mr. Puttaramu, on April 12th.

(Tr. 734.)

Following this curative instruction, the Court charged the jury that:

> In determining the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence…[t]he evidence before you consists of the answers given by the witnesses—the sworn testimony that they gave from the stand, as you recall it—and the exhibits that were received in evidence.

(Tr. 744-45.)

At no time did the Defense request any further instruction to the jury.

## DISCUSSION

*A. Standard of Review*

Under Rule 33 of the Federal Rules of Criminal Procedure, a district court may grant a defendant's motion for a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001) (citation omitted). A court must exercise its authority to grant a new trial where there is "real concern that an innocent person may have been convicted." United

States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992). See also United States v. Landau, 155 F.3d 93, 104 (2d Cir. 1998) ("A district court should grant a new trial motion if it "is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.") When deciding a Rule 33 motion, the Court "must examine the entire case, take into account all facts and circumstances, and make an objective evaluation." Ferguson, 246 F.3d at 134 (2d Cir. 2001).

### B. Prejudice to the Defendant

The Defendant argues that because the Government connected the Defendant's knowledge of the arrests to the $46,000 wire transfer to India during its rebuttal summation, the Defendant was deprived of a fair opportunity to challenge the Government's argument pertaining to the Defendant's awareness of Puttaramu's and Bhat's arrests, and the Court was deprived of an opportunity to conduct a Fed. R. Evid. 403 analysis of the argument. (Def.'s Mot. for a New Trial at 4.)

When considering improper statements or conduct by a prosecutor during trial, the Court must assess "the degree of prejudice through three factors: the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." United States v. Russo, 74 F.3d 1383, 1396 (2d Cir. 1996) (internal citation omitted.)

The Defendant relies on United States v. Forlorma, 94 F.3d 91 (2d Cir. 1996). The facts of that case are substantially different from the facts of the case at bar. There, the Second Circuit noted that it "is a rare case in which improper comments in a prosecutor's summation are so prejudicial that a new trial is required... [g]enerally, we would not reverse a criminal conviction merely because a prosecutor made an

unsupported statement in argument -especially where the trial judge sustained the defendant's objections to it." Id. at 93, 95. Nonetheless, the Court granted a new trial because the government made misstatements about evidence, "not once but three times, and with great emphasis." Id. at 95. Second, the prosecution conceded, post-trial, that its arguments had no basis in the evidence. Id. Third, although the trial court sustained the defense's objection to the government's misstatements, the Second Circuit found that the trial judge's instruction was not specific or adequate enough to address the misstatements as they pertained to the evidence at trial. Id. The trial court only

> admonished one of the lawyers during the course of the summations not to "weigh in" with his view of the evidence. The judge also instructed the jury that: "Your recollection governs, and anything that . . . the lawyers may have said is not to be substituted for your recollection of what the evidence is."

Id.

Finally, the Second Circuit found that the prosecutor's statements were "devastating" to the defense in light of all the other evidence presented during the trial. Id. at 96.

Here, the Government's argument--that the Defendant's knowledge can be inferred based on his transferring of $46,000 to India after his employees' arrests--was only said once during rebuttal summation. At a sidebar conference immediately following the Government's rebuttal summation, the Court considered counsel's arguments regarding the prejudicial nature of the rebuttal summation, and made a specific, curative instruction to the jury that addressed the Defendant's concern in this motion for a new trial—that there was no evidence presented indicating the Defendant's knowledge of the co-conspirators' arrests. Thereafter, in its charge, the Court reminded the jury that it must base its decision solely on the evidence presented, that the jury's

recollection of the evidence governs, and that the summations of counsel are not evidence.

In light of the abundant evidence of the Defendant's guilt presented[1] and the curative instructions given; the degree of prejudice, if any, from the Government's rebuttal summation was minimal.

## CONCLUSION

For the foregoing reasons, after reviewing the entire case, this Court has no "real concern that an innocent person may have been convicted." United States v. Canova, 412 F.3d 331, 349 (2d Cir. 1005) (quoting Ferguson, 246 F.3d at 133). Defendant's motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure is denied.

IT IS SO ORDERED.

Dated: New York, New York
       April 17, 2008

*(signature)*
Robert P. Patterson, Jr.
U.S.D.J.

---

[1] The evidence at trial permits a fair inference that the Defendant was aware that Puttaramu and Bhat were arrested on April 12, 2007. This evidence includes Puttaramu's testimony that he lived with the Defendant and reviewed the daily transactions of Akhila with the Defendant each night, making it probable that the Defendant noticed that Puttaramu did not come home the day he was arrested. This inference is also supported by evidence showing that the Defendant had sole control over Akhila's finances, and Puttaramu's testimony that he would frequently go to the Defendant for cash "*until the day [Puttaramu] got arrested.*" (Tr. 219.).

*Copies of this Opinion & Order sent to*:

For the Government:

Michael J. Garcia, United States Attorney
Southern District of New York
Attn: Ms. Sharon Frase, A.U.S.A.
One St. Andrew's Plaza
New York, NY 10007
Tel:   212-637-2329
Fax:   212-637-2937

For the Defendant:

Mr. Paul Condon, Esq.
33-41 Newark Street, Suite 4A
Hoboken, New Jersey 07030
Tel:   (201) 659-6133
Fax:   (201) 659-6607