**LAW OFFICE OF PAUL CONDON**
33-41 NEWARK STREET
SUITE 4A
HOBOKEN, NEW JERSEY 07030
ATTORNEY FOR SRINIVAS KASI

---------------------------------------------------
**UNITED STATES OF AMERICA,**  )
                                                         )
**Plaintiff**  )
                                                         )
                                                         )
       **v.**  )
                                                         )
**SRINIVAS KASI**  )
                                                         )
**Defendant.**  )
----------------------------------------------------  )

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Docket No.:   S2 07 CR 348-03(RPP)

<u>**CRIMINAL ACTION**</u>

*DEFENDANT'S MEMORANDUM IN AID OF SENTENCING*

TO:    HONORABLE ROBERT P. PATTERSON
         UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF NEW YORK
         UNITED STATES COURTHOUSE
         500 PEARL STREET, ROOM 2550
         NEW YORK, NEW YORK 10007

      Through counsel, defendant Srinivas Kasi files the following Sentencing Memorandum setting forth all factors which the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

### I.    INTRODUCTION

      The defendant, Srinivas Kasi, is a 60 year old man. Previous to these charges, Mr. Kasi has never been arrested or convicted of any criminal offense. Mr. Kasi and his wife of thirty years, Prafulla Mukhi reside in New York City. Together they have two children.

      Mr. Kasi's crime was not a violent one. He did not attempt to harm or injure anyone, nor was he convicted of a weapon's offense. Rather he was convicted of conspiracy to commit food stamp fraud (18 U.S.C. 371), a Class D felony; Food Stamp Fraud (7 U.S.C. 2024(b)(1) and 2016, and 7 CRF 278.2), a Class C felony, and Theft of Food Stamp Benefits (18 U.S.C. 641), a Class C felony

As based upon the following arguments, the defense respectfully requests that the Court impose a sentence of probation with restitution as opposed to a sentence of 70 months in Federal prison.

## II. LEGAL ARGUMENT
### *Sentencing Under Booker*
#### a.

As an initial observation, our Courts have recognized that the United States Sentencing Guidelines do not require a judge to leave compassion and common sense at the door to the courtroom. <u>United States v. Johnson</u>, 964 <u>F.2d</u> 124, 125 (2nd Cir. 1992). Indeed, in <u>Koon v. United States</u>, 116 <u>S.Ct</u>. 2035 (1996), the United States Supreme Court reemphasized that despite the existence of the Sentencing Reform Act, sentencing judges still possess broad discretion to tailor appropriate sentences to the facts of the case and the idiosyncrasies of the defendant. In *Koon*, Justice Kennedy acknowledged the Sentencing Guideline's goal of uniformity, but emphasized:

> This too must be remembered, however. It has been uniform and constant in the federal judicial tradition for the sentencing judge to *consider every convicted person as an individual and every case as a unique study in the human failing that sometimes mitigate, sometimes magnify, the crime and punishment to ensue*. We do not understand it to have been the congressional purpose to withdraw all sentencing discretion from the United States District Judge

<u>Koon</u>, <u>supra</u>, 116 <u>S.Ct</u>. at 2053 (emphasis supplied). This observation is particularly compelling in the advent of <u>United States v. Booker & Fanfan</u>, 125 <u>S.Ct.</u> 738 (2005), decreeing the Sentencing Guidelines as "advisory."

On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holding in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004) and <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) applies to the Federal Sentencing Guidelines. <u>United States v. Booker</u>, 125 S. Ct. 738, 756 (2005). Given the mandatory nature of the Sentencing Guidelines, the Court found "no relevant distinction between the sentence imposed pursuant to the Washington statutes in <u>Blakely</u> and the sentences imposed pursuant to the Federal Sentencing Guidelines" in the cases before the Court. <u>Id.</u> at 751. Accordingly, reaffirming its holding in <u>Apprendi</u>, the Court concluded that

> [a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

<u>Id.</u> at 756.

Based on this conclusion, the Court further found those provisions of the federal Sentencing Reform Act of 1984 that make the Guidelines mandatory, 18 U.S.C. § 3553(b)(1) or which rely upon the Guidelines' mandatory nature, 18 U.S.C. § 3742(e), incompatible with its Sixth Amendment holding. Booker, 125 S. Ct. at 756. Accordingly, the Court severed and excised those provisions, "mak[ing] the Guidelines effectively advisory." Id. at 757.

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by Booker, requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a). Booker, 125 S. Ct. at 757. Thus, under Booker, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a).

The primary directive in Section 3553(a) is for sentencing courts to "*impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2.*" Section 3553(a)(2) states that such purposes are:

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)  to afford adequate deterrence to criminal conduct;
©   to protect the public from further crimes of the defendant; and
(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, § 3553(a) further directs sentencing courts to consider the following factors:

1) the nature and circumstances of the offense and the history and characteristics of the defendant (§ 3553(a)(1);
2) the kinds of sentences available (§ 3553(a)(3);
3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct (§ 3553(a)(6); and
4) the need to provide restitution to any victims of the offense. (§ 3553(a)(7).

Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is *not* an appropriate means of promoting correction and rehabilitation" (emphasis added).

Under 18 U.S.C. § 3661, "*no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors

3

such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth.  See U.S.S.G. § 5H1.  See also United States v. Nellum, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 3, 2005) (Simon, J.) (taking into account fact that defendant, who was 57 at sentencing, would upon his release from prison have a very low likelihood of recidivism since recidivism reduces with age; citing Report of the U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines, May 2004); United States v. Naylor, _ F. Supp. 2d __, 2005 WL 525409, *2, 2005 U.S. Dist. LEXIS 3418 (W.D. Va. Mar. 7, 2005) (Jones, J.) (concluding that sentence below career offender guideline range was reasonable in part because of defendant's youth when he committed his predicate offenses  he was 17  and noting that in Roper v. Simmons, 125 S. Ct. 1183, 1194-96 (2005), the Supreme Court found significant differences in moral responsibility for crime between adults and juveniles).

The directives of Booker and § 3553(a) make clear that courts may no longer uncritically apply the guidelines.  Such an approach would be "inconsistent with the holdings of the merits majority in Booker, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in Booker, directing courts to consider all of the § 3353(a) factors, many of which the guidelines either reject or ignore."  United States v. Ranum, 353 F. Supp. 2d 984, 985-86 (E.D. Wisc. Jan. 19, 2005) (Adelman, J.).  As another district court judge has correctly observed, any approach that automatically gives "heavy" weight to the guideline range "comes perilously close to the mandatory regime found to be constitutionally infirm in Booker."  United States v. Jaber, __ F. Supp. 2d __, 2005 WL 605787 *4 (D. Mass. March 16, 2005) (Gertner, J.).  See also United States v. Ameline, 400 F.3d 646, 655-56 (9th Cir. Feb. 9, 2005) (advisory guideline range is "only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence"), reh'g en banc granted, 401 F.3d 1007 (9th Cir. 2005).

Justice Scalia explains the point well in his dissent from Booker's remedial holding:

> Thus, logic compels the conclusion that the sentencing judge, after considering the recited factors (including the guidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range.  If the majority thought otherwise  'if it thought the Guidelines not only had to be considered (as the amputated statute requires) but had generally to be followed' its opinion would surely say so.

Booker, 125 S. Ct. at 791 (Scalia, J., dissenting in part).

Likewise, if the remedial majority thought the guidelines had to be given "heavy weight", its opinion would have said so.  The remedial majority clearly understood that giving any special weight to the guideline range relative to the other Section 3553(a) factors would violate the Sixth Amendment.

In sum, in every case, a sentencing court must now consider <u>all</u> of the § 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. And where the guidelines conflict with other sentencing factors set forth in § 3553(a), these statutory sentencing factors should generally trump the guidelines. See <u>United States v. Denardi</u>, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in part, dissenting in part) (arguing that since § 3553(a) requires sentence be no greater than necessary to meet four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range). See Also <u>United States v. Crosby</u>, 387 F.3d 103, 112 (2d Cir. 2005) (Rejecting per se reasonableness of guidelines and requiring meaningful consideration to the §3553(a) factors in determining sentence.)

### b. *Application of the Statutory Sentencing Factors*

Under *Booker*, in determining the minimally sufficient sentence, § 3553(a) further directs sentencing courts to consider the following factors:

1) the nature and circumstances of the offense and the history and characteristics of the defendant (§ 3553(a)(1);
2) the kinds of sentences available (§ 3553(a)(3);
3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct (§ 3553(a)(6); and
4) the need to provide restitution to any victims of the offense. (§ 3553(a)(7).

First, we respectfully ask Your Honor to consider "*the nature and characteristics of the offense*". Here, this Court is confronted with a case where employees of a small grocery store, Akhila, illegally received cash in return for fraudulent food stamp purchases. The indictment charges that between January 1, 2006 through April 2007, Raveendra Puttaramu, Lokesh Bhat and Srinivas Kasi fraudulently exchanged food stamp benefits for cash. During the time period of the indictment, Mr. Kasi was no longer owner/operator of Akhila, but instead previously sold half of the business to Mr. Bhat and became a silent partner. After selling a one-half interest in Akhila to Mr. Bhat, Mr. Kasi obtained full time employment elsewhere at Interior Building Services . After this sale, Mr. Kasi was rarely at Akhila.

Mr. Bhat and Mr. Puttaramu ran the day to day operations of Akhila as evidenced by the hours of investigative video surveillance of the store. In these videos Mr. Bhat and Mr. Puttaramu are seen accepting payment of food stamps and returning cash to customers. Each customer made a legitimate purchase, and the government argued at trial that the employees of Akhila would ring up the purchase for more money than the price of the product being purchased and then split the difference between the purchase price and the charged price between the customer and the employees of Akhila. Despite approximately nineteen video taped visits to Akhila by federal agents, Mr. Kasi is never seen engaging in this illegal behavior. He is never seen on these videotapes at all. Similarly, Mr. Kasi was not seen on any of the in-store video recovered from Akhila by the FNS.

Similarly, "*the history and characteristics of the defendant*" warrant a probationary sentence. Srinivas Kasi was born on October 10, 1947 in Parasuranapura, Karnataka, India to the marital union of Venkltaramanaian Setty and Lalithamma. This marital union lasted fifty seven years until the death of his parents, his mother in 2001 and his father in 2002. Defendant's parents resided in India their entire lives. His father worked as a merchant and his mother a homemaker. The Defendant has four siblings, all of whom reside in India.

Following his graduation from high school Mr. Kasi obtained a college degree from a government college in Chireadurga, India. In 1971, Mr. Kasi obtained his Bachelor's Degree in Engineering from the University of Mysore in Mysore, India. He has been employed throughout his adult life. Immediately following college Mr. Kasi worked as a civil engineer for the government. Upon moving to the United States he worked odd jobs. He then became an estimator with CP Construction. This job continued until 1991. Between 1991 and 2004 Mr. Kasi worked as an estimator for various companies. In 2004 he purchased Akhila, Inc., a small grocery store. He then sold half his interest in Akhila and obtained full time employment with Interior Building Services, again as an estimator, from 2005 until the present where he continues to be dutifully employed.

In 1978 Mr. Kasi married Prafulla Mukhi. This marriage has lasted thirty years and produced two children, Ajay Kumar, age 28, and Sneha Srinivas, age 22. Ajay is a college graduate and owner of a tennis academy in New York. Sneha is a college graduate and currently attends medical school in India. In her letter to the court, Ms. Kasi describes her husband as always supportive of her, holding her hand through devastating parts of her life. According to Mrs. Kasi, the defendant has sacrificed throughout their marriage for the benefit of her and their children. Not only is Mr. Kasi the only economic support for his immediate family, but he has provided financial support to his parents and siblings as well as hers. (Please see attached). Ajay Kumar, in his letter to Your Honor, explains his appreciation for his father's difficult early days in the United States earning minimum wage in order to provide his family with a better future. According to Mr. Kumar, his father is an honorable person whom he respects and admires; who taught him to be a good student, an honest, trustworthy and caring man. (Please see attached).

In 1988, Mr. Kasi visited the United States as a tourist and fell in love with this country. With the intention of providing his family a better life, he obtained employment in order to provide for his family still in India and to create a future for his family in America. In 1991 Mr. Kasi's wife and children followed, residing until this day in Manhattan. That same year Mr. Kasi applied for citizenship and was granted permanent residency. In 2000, Mr. Kasi became a naturalized United States citizen.

Throughout his life Mr. Kasi always believed in the importance of education. He himself came from extremely humble beginnings. A college education could change the life of someone with such a meager start, but obtaining a college degree seemed like a fantasy. Despite these difficulties, Mr. Kasi worked hard in school obtaining a full college scholarship. He became the first person in his family to obtain a college degree. He also helped friends and family obtain educations as well. One such friend is Mr. B.R. Kulkarni whom Mr. Kasi aided in obtaining an education for himself and finding good schools for the Kulkarni children. Mr. Kasi also helped

disadvantaged children in his village in India find good schools. (Please see letter of Bhagavan Shetty). While in college Mr. Kasi distributed free books to disadvantaged high school students. He also paid school fees for these children. (Please see letter of G.K. Anand). His children, of course, benefitted from Mr. Kasi's concentration on education. His son obtained a scholar/athlete scholarship, graduated from college and runs his own business. He encouraged his daughter to follow her dreams of becoming a doctor. She is now studying medicine in India. Despite Mr. Kasi's successes, as a result of obtaining his college degrees, he never forgot the other children in his village in India who did not have the same opportunities he had. He had watched children lose their opportunity to obtain an education because their families could not cover the school fees that are required to obtain public education in India. As a result, he and his wife opened a public school in Bangalore, India, specifically for children who otherwise would not receive educations. The school still operates today.

This dedication to his community is not confined to promoting education. Instead Mr. Kasi has always been dedicated to philanthropic causes, both public and private. He organized health camps in India, providing health check ups, free medical treatment and medicines to those in need free of charge. (Please see letter of G.K. Anand). According to Noreen, the Deacon of the Pentecostal Church of Zion Ministry in Bangalore, India; although Mr. Kasi is not a Christian, he constantly supported her church. He provided his time and his money to support the church's construction. (Please see attached letter). He also financially supported his own temple in India, providing for their food program that feeds impoverished children. Along with his money, Mr. Kasi gave his time to the their temple by participating in religious ceremonies and temple functions. (Please see letter of Daivagna Krishna Murthy Swamiji). When Mr. Kasi's cousin Shyamala became orphaned, he became her sole support. He provided Shyamala with food, clothing, shelter and an education. Once she became an adult he helped her obtain a job as a teacher. When she became hospitalized, he paid all her medical bills and provided emotional support. A friend of Mr. Kasi, M. Satyanarayana, credits the defendant with saving his life, by helping him through an exceptionally devastating period of his life when his wife was extremely ill. Mr. Kasi provided this comfort by supporting the family emotionally and agreeing to take care of their children if his friend's wife were to pass. (Please see attached letter). Throughout his life, Mr. Kasi has dedicated his time and effort to helping those most in need.

In sum, Mr. Kasi is a sixty-year-old man who spent his life attempting to provide opportunities and support to his family, friends and the disadvantaged children in his Indian village. He is respected by family, friends and community members who describe the defendant as a humble, hardworking, religious man who is dedicated to his family. Mr. Kasi has never before been arrested nor convicted of any crime. Accordingly, the defense respectfully submits that a sentence of probation would be wholly appropriate.

The Court must also consider *need for the sentence imposed and the kinds of sentences available*. In this matter, the Court must consider the appropriate sentence for a sixty-year-old man with no criminal history. The defense submits a non-custodial sentence is appropriate based on Mr. Kasi's lack of criminal history and his advanced age. Empirical research, the results of which were accepted and reported by the U.S. Sentencing Commission, evidences that recidivism consistently reduces with age. See United States v. Nellum, 2005 WL 300073, 2005

U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 3, 2005) (Simon, J.) (taking into account fact that defendant, who was 57 at sentencing, would upon his release from prison have a very low likelihood of recidivism since recidivism reduces with age; citing Report of the U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines, May 2004, at p. 12).  At 60 years-old, with no prior criminal transgressions, Mr. Kasi is highly unlikely to become reinvolved with the criminal justice system.  Hence, the defense submits that there is little need for a custodial sentence to deter the defendant, protect the public and provide just punishment.

Furthermore, Mr. Kasi's health militates against a prison sentence.  As noted in the presentece report he has been under extreme stress. (PSI ¶67).  Recently, he has sought treatment and has been prescribed medications related to hypertension, angina and difficulty sleeping. (Please see attached).

A sentence of probation, which falls below the advisory guideline range would not create *"unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"*.  Mr. Kasi has no criminal record.  He has never been arrested or convicted of any criminal conduct prior to this offense.  The defendant was charged under the indictment in this matter with two other co-defendants, Lokesh Bhat and Raveendra Puttaramu.  Mr. Bhat pled guilty to count 1 of Indictment Number S2 07 Cr 348 (RPP) charging Conspiracy to Commit Food Stamp Fraud.  Mr. Bhat, who like Mr. Kasi has no criminal record, was sentenced to five years probation with six months home confinement as a condition of probation.  He was also ordered to pay over $900,000.00 in restitution.  This office understands that Mr. Puttaramu pled to the same charge as Mr. Bhat, cooperated against Mr. Kasi, was sentenced to time serve and ordered to pay over $900,000.00 in restitution as well.  Previous to this office, Mr. Puttaramu had never been convicted of any crime.  All three of the defendants charged under this indictment have no previous criminal history.  Thus, they all stand in similar positions before the Court.

Regarding the conduct of the individual parties, the video surveillance taken by federal agents investigating an alleged food stamp fraud operation at Akhila shows Mr. Bhat and Mr. Puttaramu returning cash to customers who were making purchases using food stamps. As Mr. Kasi was no longer owner operator of Akhila, after selling half his interest in the store to Mr. Bhat, he obtained full time employment elsewhere and rarely worked at the store.  He maintained signatory control on the Akhila food stamp account at Valley National Bank.  Mr. Puttaramu testified that he would contact Mr. Kasi and meet him to make cash withdrawals to cover the money that was given to customers redeeming food stamps for cash and to fill the registers that they kept at Akhila.  Mr. Puttaramu also testified that he never told Mr. Kasi what the money was needed for other than to maintain cash in the registers at Akhila.  He also testified that sometimes he withdrew the money himself, despite not having official control over the account.  Mr. Puttaramu also testified that Mr. Kasi was rarely in Akhila after selling half the business to Mr. Bhat.  As shown on the video surveillance of Akhila, Mr. Bhat and Mr. Puttaramu were deciding who to permit to be given cash in exchange for food stamps.  Mr. Bhat and Mr. Puttaramu were in control of these illegal transactions.  They were adjusting the books and keeping track of cash shortfalls.  The idea that Mr. Kasi was a puppeteer controlling the

actions of Mr. Bhat and Mr. Puttaramu forcing them to engage in this criminal conduct is without merit.  He was hardly ever in the store, and was engaged in unrelated full time employment.   If Mr. Bhat and Mr. Puttaramu did not wish to engage in this conspiracy they could have ceased their criminal conduct.  But they did not.  In fact, they were organizing and perpetrating this fraud.   Mr. Bhat and Mr. Puttaramu were both given non-custodial sentences for their participation in this conspiracy.  Based on the foregoing, to avoid unwarranted sentencing disparity in this matter the defense respectfully requests that Your Honor sentence Mr. Kasi to a non-custodial sentence.

Further, a non-custodial sentence would enable Mr. Kasi to *provide restitution to victims of the offense*.  Although the defense objects to probation's calculation of restitution in this matter (Please see defense's response to presentence report), clearly the restitution owed to USDA FNS as a result of this conspiracy is quite significant.  As previously mentioned Mr. Kasi has been gainfully employed for all of his adult life.  He currently earns $100,000.00 per year as an estimator.  As Mr. Kasi is sixty years-old, his career is not indefinite, but he has many years left to work hard and provide the victims in this case with restitution.  Confinement would of course eliminate the possibility of Mr. Kasi paying the USDA FNS restitution for a considerable period of time.  If Mr. Kasi is sentenced to confinement he would of course lose his job and may have great difficulty obtaining employment after his release, as he would be a convicted felon who will have missed out on advances in the industry.  Also, as he advances in age the possibility of working may not exist.  Therefore, in order to assure that the victims in this case are provided with restitution, we respectfully request a sentence of non-incarceration.

### IV.        CONCLUSION

In summary, the Defendant respectfully requests that the Court consider the aforementioned arguments in fixing a sentence of probation which would fully vindicate the Government's interest in deterrence and restitution, while sparing Mr. Kasi incarceration.

Respectfully submitted,

s/ Paul Condon

PAUL CONDON, ESQ.
33-41 NEWARK STREET, SUITE 4A
HOBOKEN, NEW JERSEY 07030
(201) 659-6133
Attorney for Defendant
Srinivas Kasi

Dated: May 20, 2008
cc: Sharon Frase, A.U.S.A.